(105 So. 191)

BOARD OF REVENUE v. McDANAL.
(6 Div. 403.)

(Supreme Court of Alabama. June 18, 1925.)

1. Statutes ⬥183—To justify departure from plain language of statute, there must be moral conviction that Legislature could not have intended such result.

Though strict letter of law is not allowed to defeat an otherwise clear intention, to justify departure from plain language of statute there must be a moral conviction that Legislature could not have intended such result.

2. Animals ⬥50(2)—Stock law election cannot be held between November 1st and July 1st of year following.

Notwithstanding general language in Code 1923, §§ 10208 and 10212, held that, section 10214, prohibiting stock law election between November 1st and July 1st, of year following, applies to all such elections, and is not limited to a second election.

Appeal from Circuit Court, Jefferson County; W. A. Jenkins, Special Judge.

Petition for common-law certiorari by A. B. McDanal against the Board of Revenue of Jefferson County. From a judgment granting the relief prayed, respondent appeals. Affirmed.

Matthews & Morrow and Ritter, Wynn & Carmichael, all of Birmingham, for appellant.

Section 10214 of the Code of 1923 applies only in cases where there has been an election within one year.

Nesbit & Sadler, of Birmingham, for appellee.

No election may be held between November 1st and July 1st. Code 1923, § 10214; Acts 1893, p. 431, § 8.

SOMERVILLE, J. This proceeding is by petition for the common-law writ of certiorari, directed to the board of revenue of Jefferson county, to vacate and nullify a stock law election held in and for precinct 20 of that county on the 4th day of November, 1924.

The trial court overruled demurrers to the petition, and on final hearing granted the relief prayed for.

The only question presented for decision is whether this stock law election could be legally held after November 1st.

Section 10208, Code 1923 (section 5882, Code 1907) provides:

"Wherever one-fourth of the bona fide freeholders residing in any precinct in any county owning a freehold estate in any such precinct, shall file with the court of county commissioners or court of like jurisdiction of the county, a petition in writing stating that they desire an election," etc. "[the court] shall file such petition, * * * and shall indorse

thereon and spread on the minutes of the court * * * an order that an election shall be held in such precinct on a day to be named in such order, not less than forty nor more than ninety days from the date of the filing of such petition. * * * *"

Section 10212, Code 1923 (section 5886, Code 1907) provides:

"If a majority of the votes cast shall be for 'stock law, yes,' it shall thereafter be unlawful for stock to run at large in the precinct or precincts in which the election was held, and if a majority of the votes cast be 'stock law, no,' it shall not be unlawful for stock to run at large in such precinct."

Section 10214, Code 1923, provides:

"When an election is held in any precinct under the provisions of this article, no other election to determine the question of 'stock law, yes,' or 'stock law, no,' shall be held therein until the lapse of one year from the time of holding such election, and no election shall be held under this article between the first day of November and the first day of July of the succeeding year. And if the result of said election is 'stock law, yes,' it shall take effect on the first day of January next after such election is held."

Our present stock law statutes, including those above set out, are codifications of the original Stock Law Act (Gen. Acts 1903, pp. 431-438). Section 10214, Code 1923, is identical with section 8 of the original act, codified as section 5888, Code 1907, as amended by the act of September 30, 1919 (Gen. Acts 1919, p. 840). Section 8 of the original act (section 5888, Code 1907) is as follows:

"When an election has been held in any precinct under the provisions of this Act, no other election to determine the question of 'stock law, yes,' or 'stock law, no,' shall be held therein until the lapse of one year from the time of holding such election, provided no election shall be held [therein] under this act between the first day of March and the first day of December."

It will be observed that the amendatory act of 1919 substituted "and" for "provided," changed the period within which no election could be held, and added: "And if the result of said election is 'stock law, yes,' it shall take effect on the first day of January next after such election is held."

The respondent's contention is that the provision that "no election shall be held under this article between the first day of November and the first day of July of the succeeding year," must be restricted in its application to the *second* or later election authorized to be held in any precinct after the lapse of one year from a first election. The chief arguments in that behalf are that any other construction would present a conflict with section 10208, supra, which authorizes proceedings looking to and resulting in the ordering of an election "whenever" the prescribed petition is filed; and also with section 10212, supra, which provides that when the stock law carrries at the election, "it shall *thereafter* be unlawful for stock to run at large, etc."

A further argument is that the black letter caption, given by the code commissioner to section 10214 (section 5888, Code 1907), "only one election within year," indicates an intended restriction of the entire section to *subsequent* elections after one election has been held in the precinct.

[1, 2] We have examined these arguments with due care, but we do not think they are weighty enough to avoid the construction of the statute according to its plain and unambiguous language. Sections 10208 and 10212 are but general in their terms as to the time for ordering elections, and the time when the stock law shall go into operation, and though the provision in section 10214, restricting the period within which elections may be held, qualifies the previous sections, it does not in fact contradict them. For the same reason we think the last clause of section 10214, postponing the operation of the stock law until January 1st following, is intended to apply to all elections, and either qualifies or amends the provision of section 10212 as to the operation of the law.

But, even if it did contradict them, it was manifestly an amendment to the *entire law*, and must be given effect according to its terms. The words, "*No* election shall be held under this *article*," can in reason mean but one thing, and there is no uncertainty in their application; and while the strict letter of the law is not allowed to defeat an otherwise clear intention (Thompson v. State, 20 Ala. 54; Cloverdale Homes v. Cloverdale, 182 Ala. 419, 62 So. 712, 47 L. R. A. [N. S.] 607), yet, to justify a departure from the plain and well understood language of the statute, "there must be a moral conviction, based on the unreasonableness of the application sought to be made, that the Legislature could not have intended such result." Napier v. Foster, 80 Ala. 379.

We do not think that the black letter caption given to this statute by the code commissioner is of any material significance or importance in the construction of its language; and in this connection it may be observed that this section in the original act (Gen. Acts 1903, p. 434, § 8), was designated by the phrase "time of holding elections," including, very clearly, *all* elections.

It results, in our view of the law, that the demurrer was properly overruled, and the prayer of the petition was properly granted.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.